(69 App. Div. 24.)

### LIPPMANN v. LOW et al.

(Supreme Court, Appellate Division, First Department. February 7, 1902.)

MECHANIC'S LIEN—CONTRACT FOR WORK—AGENCY—HUSBAND AND WIFE.

A lien against house conveyed to defendant by M. cannot be sustained; it not appearing that the conveyance was in fulfillment of the agreement of M. to convey to H., husband of defendant, one of 17 houses, for work thereon, and the work, though contracted for by M. before the conveyance, not having been done till after the conveyance, and plaintiff having then consented to do it only on the direction of H., and his agreement to pay therefor; there being no evidence that H. was agent of his wife, or that she knew plaintiff was doing the work, and no implication of agency or assent being raised by the fact that H. was her husband.

Appeal from special term, New York county.

Action by Henry Lippmann against Lydia Low and another. From a judgment dismissing complaint, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Samuel D. Levy, for appellant.
Mortimer M. Menken, for respondent Low.
E. Louis Jacobs, for respondent Mandelstein.

PATTERSON, J. This is an action to foreclose a mechanic's lien upon premises known as No. 1325 Park avenue, in the borough of Manhattan, city of New York. The defendants now before the court are Lydia Low and Morris Mandelstein. On the trial of the action, the complaint was dismissed as to both those defendants; the trial judge stating that "the ground for this decision is that the proofs of the plaintiff are insufficient to sustain the complaint." It is alleged in the complaint that prior to the 28th day of May, 1900, the plain-

tiff had entered into a verbal contract with the defendant Mandelstein to paint, paper, and decorate for said defendant 17 buildings on the northerly side of 100th street, between Park and Lexington avenues, in the borough of Manhattan, and the buildings on the premises against which the lien was filed is one of such 17 buildings; that Mandelstein agreed to pay to the plaintiff for painting, papering, and decorating the said 17 buildings the sum of $7,000, and that the plaintiff performed extra work on the buildings to the amount and of the value of $200, and that there still remains due and unpaid to the plaintiff on his contract with Mandelstein the sum of $1,610; that on or about the 28th day of April, 1900, the defendant Mandelstein conveyed the premises 1325 Park avenue to the defendant Lydia Low, who then became, and still is, the owner in fee; that on or about the 1st of May, 1900, and before any considerable or substantial amount of work had been done or materials furnished to and for the building 1325 Park avenue, the plaintiff being unwilling, by reason of the conveyance of the premises by Mandelstein to the defendant Low, to proceed with the contract and perform the work and furnish the materials therefor, the said Lydia Low, who then was, and still is, the owner of the premises, directed and requested the plaintiff to proceed with and perform such work and furnish materials and complete his contract; and that the plaintiff performed the work and furnished the materials and carried out and completed the contract with the knowledge and consent of the owner, the defendant Lydia Low, and at her special instance and request. Then follow the ordinary allegations in actions of this character, relating to the filing of a lien, and the failure to pay the amount to which the plaintiff claimed to be entitled. There can be no question of the complaint being properly dismissed as to the defendant Mandelstein; but it is urged that it was error to dismiss the action as to the defendant Low, and that it sufficiently appeared that she was either the contracting party with the plaintiff, or that she consented to his doing the work and furnishing the materials for which the lien was filed.

It appeared in evidence that Lydia Low was the wife of Hillard Low, who had contracted with Morris Mandelstein to furnish what is called the "trim" for all of the 17 houses referred to in the complaint. Apparently, he was to receive his compensation by a conveyance to him from Mandelstein of one of the 17 houses. On the 28th of April, 1900, Mandelstein conveyed to the defendant Lydia Low the house No. 1325 Park avenue, but it is not proven that this conveyance was made in fulfillment of the agreement between Mandelstein and Hillard Low, although that fact seems to have been assumed. The plaintiff's right to claim as against the defendant Lydia Low is placed altogether upon a conversation which the plaintiff swears he had with Hillard Low some time in the latter part of April, 1900. He testifies that in that conversation he and Low were talking about finishing the houses, and that Low asked him why he did not finish his house, to which the plaintiff replied that he was not working, because he did not get money, and further said to Low that he could not finish the work until he got money, or knew from whom he could get the money, and that he also said that he could not finish the

house "until I am settled with Mandelstein," whereupon Low said, "What have you got to settle with Mandelstein?" and the plaintiff told him that Mandelstein owed him very much money, and he could not go ahead and finish what Low called his house. Thereupon Low said, "Now, Mr. Lippmann, you know this house belongs to me, and go ahead and finish it, and I will pay you," and then he asked how much the house was worth, and the plaintiff told him it was worth to finish $525, to which Low said, "That will be all right. I will pay." "I would like to have the house finished so that I can arrange it,"—to which the plaintiff said, " 'All right. I will go ahead and finish it, if you say you will pay me for it.' He said, 'All right.' " The plaintiff also testified that on another occasion Low also said to him: "That will be all right. I will pay you. Go ahead and finish it,"—and also that Hillard Low was at the house every two or three days, and saw the work the plaintiff was doing there, and picked out some wall papers, and directed how the decorating of the front and back parlor ceiling should be done. The plaintiff had no personal relations with Lydia Low; nor does he claim to have ever seen her, or had any communication with her upon the subject of work to be done upon her house. He relied upon the statement of Hillard Low as to the ownership of the property, and his contract was made with him. There was nothing whatever in the proofs to show any agency on the part of Hillard Low to make the contract for his wife, nor is there the slightest evidence to indicate that she had any knowledge that the plaintiff was doing the work upon the premises, nor is there a fact from which an inference can be drawn that in any manner she assented to that work being done. Nothing appears connecting her with the subject-matter of the action. Neither agency nor assent can be implied from the simple fact that she was the wife of Hillard Low. What her financial relations with her husband may have been, or what may have been the consideration for the transfer of this particular house from Mandelstein to her, does not appear. It is not even shown that she was aware that the work contracted for by the plaintiff with Mandelstein had not been completed at the time she took the deed of the premises. As Lydia Low made no contract herself with the plaintiff, and as it is not proven that her husband was her agent to make a contract, and as the proof entirely failed to show any act of consent or acquiescence in the work being done upon her property, the court below properly dismissed the complaint.

The judgment must be affirmed, with costs. . All concur.